By the Court.

This is an appeal from a find judgment, rendered in the court of the first district, and brought before this court, on a statement of facts, which is in substance as follows : ’
Phillips failed in 1808. Williamson and Johnson became his syndics. At the time of his bankruptcy, the,bankrupt owed a. large sum to the revenue of the U. States, on Custoni-House bonds to which these two persons were sureties. The bankrupt, previous to his failure, had placed m the hands of Johnson, certain merchandize, to secure him and the said Williamson against the bonds, and also for the purpose of securing to Johnson *206 the payment of certain debts, due to him, in his individual capacity. When the Custbm-House bonds became due, and payment was about to be inforced, it appears that Johnson refused to permit the goods in his possession to meet it, unless Williamson would agree to Secure him from any deficiency that might arise in paying off’ the bonds, and also satisfying Johnson’s individual debt, by placing in his hands certain goods for this purpose. Johnson finally took up the Custom-House bonds (which were a priviledged debt) by raising money on his own credit, and it was afterwards allowed to him by Phillips’ creditors. The merchandize which he held, belonging to the estate of the bankrupt, was sold, and the proceeds appropriated for the benefit of Phillips’ creditors. And here, it is proper to remark that the account of sales exceeded the' debt, due on the Custom-House bounds.
East. District.
Dec. 1813.
Afterwards, Johnson sold the goods placed into his hands by Williamson, in payment for which there appears to be a deficiency, by bad debts. To receive the sum thus deficient the syndics of Williamson brought suit in the District Court for the first district, ánd obtained a judgment, which we think erroneous.
The Judge below was wrong, in considering the deposit of goods, made by. Williamson with Johnson, as a loan to Phillips’ creditors. Being *207 both syndics for the same'.person, it is, by Bp means clear, that they could become separate and distinct contracting parties, in ^y thing related to the administration of the bankrupt’s estate. But, independently of this consideration, the very terms of the agreement between them, shew that it was intended solely for the benefit of Johnson," and that, only ón a contingency which never did happen, viz. the insufficiency of the sale of Phillips’ goods to meet the payment of the Custom-House bonds. For, as to Johnson’s private debt, nothing appears in the statement of facts.
If then, the transaction cannot be considered, as a loan to Phillips’ syndics, may it be viewed as an advance made by one of them, for the benefit of the estate ? Syndics, appointed to an insolvent debtor, represent both him and his creditors : the debtor, to collect debts due to him, and the creditors to hold the estate of the insolvent for their benefit, to be distributed as the law requires. Perhaps, they may have it in their power to make advances for the debtor, but this could only be in discharging his debts. For, until these are paid, he cannot hold any thing, except to the use of his creditors. If, therefore, the syndics advance money or goods, for the benefit of an insolvent’s estate, in paying his debts, perhaps the only effect the advance could have would be to sufero- *208 ekte them to fherights of the creditor whom they y . * ⅜ ° * haa paid* In strict pursuance of law, the ad-mi* nistratorof the estate of an insolvent debtor can pay nothing, except by order of court. There are certainly not maxims of laws, no principles of justice that will authorise the syndics of an insolvent debtor to throw their own goods into the mass of his estate, sell them on credit, take to themselves all the benefits of the good debts and make the estate responsible for the bad.
From the best view we are able to give to this subject, we are of opinion that Phillips* syndics, Johnson cannot be considered as having represented, and acted for, the estate in tins transaction, but must be viewed as having acted in his own individual right and capacity. As an additional proof of the correctness of this opinion, we find that in October 1809, eighteen months after Phillips’ bankruptcy, he applied by letter to Meeker, Williamson & Patton, to know how he should dispose of a part of the goods still remaining in his hands, and they, in their answer recommend tQ him, to do the best he could for all concerned : pot in any manner disclaiming their right and control over them.
It ordered that the judgment of the District Court be reversed and cancelled, and we do further order judgment to be entered for the defendants, die appellants, with cost? of fpity both in this and the District Court.